UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

```
*********************************** *
Pop Warner Little Scholars, Inc.;                  *
Barbara Doughty, individually and on behalf of New *
     Hampshire Pop Warner Football Conference;     *
Jason Patch, individually and on behalf of New     *
     Hampshire Pop Warner Football Conference      *
                                                   *    Civil Action No. _____
v.                                                 *    Jury Trial Demanded
                                                   *
New Hampshire Youth Football & Spirit              *
Conference; Richard Pelletier; Robert Schiavoni;   *
Ellen Schiavoni; and Deborah A. Smith              *
*********************************** *
```

**VERIFIED COMPLAINT FOR PRELIMINARY AND PERMANENT
INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES**

Plaintiffs, Pop Warner Little Scholars, Inc., Barbara Doughty, individually and on

behalf of New Hampshire Pop Warner Football Conference, and Jason Patch,

individually and on behalf of New Hampshire Pop Warner Football Conference, by and

through their attorneys, McLane, Graf, Raulerson & Middleton, Professional Association,

complain against Defendants for trademark infringement and dilution, cyberpiracy,

breach of fiduciary duties of a charitable trust, *ultra vires* corporate actions, breach of

contract, unfair competition and unfair and deceptive practices.  Plaintiffs seek

preliminary and permanent injunctive relief, declaratory judgment, and damages.  In

support of their Complaint, Plaintiffs state as follows:

**PARTIES**

1.      Plaintiff Pop Warner Little Scholars, Inc. ("Pop Warner") is a registered

Pennsylvania nonprofit corporation with its headquarters located at 586 Middletown

Boulevard, Suite C-100, Langhorne, Pennsylvania 19047.  It is a national youth football

and cheerleading organization which issued a charter to what had been New Hampshire Pop Warner Football Conference.

2.    Plaintiff Barbara Doughty resides at 55 Sleepy Hollow Lane, Epsom, New Hampshire 03275, and is a director of an organization known as New Hampshire Pop Warner, recognized by Pop Warner as the official Pop Warner Conference in New Hampshire.  She is a member of what had been New Hampshire Pop Warner Football Conference and also has been a director of the Hooksett Pop Warner Association.  She brings claims derivatively on behalf of New Hampshire Pop Warner Football Conference.

3.    Plaintiff Jason Patch resides at 842 Smyth Road, Manchester, New Hampshire 03104, and is the president of New Hampshire Pop Warner.  He is a member of what had been New Hampshire Pop Warner Football Conference and also has been a director of the Hooksett Pop Warner Association.  He brings claims derivatively on behalf of New Hampshire Pop Warner Football Conference.

4.    Nominal Plaintiff and Defendant New Hampshire Youth Football & Spirit Conference ("NH Conference"), formerly known as New Hampshire Pop Warner Football Conference, is a New Hampshire voluntary corporation and a charitable trust, with its current de facto headquarters located at 49 Old Center Road North, Deerfield, New Hampshire 03037.

5.    Defendant Richard Pelletier resides at 49 Old Center Road North, Deerfield, New Hampshire 03037, and is a de facto director and the president of NH Conference.

6.    Defendant Robert Schiavoni resides at 150 Mooresville Road, Manchester, New Hampshire 03103, and is a de facto director and the vice president of NH Conference.

7.     Defendant Ellen Schiavoni resides at 150 Mooresville Road, Manchester, New Hampshire 03103, and is a de facto director and the secretary of NH Conference.

8.     Defendant Deborah A. Smith resides at 9 Kingsbury Street, Derry, New Hampshire 03038, and is a de facto director and treasurer of NH Conference.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 & 1338, and 15 U.S.C. §§ 1121 & 1125(a) because the Lanham Act claims contained herein arise under the laws of the laws of the United States.  This Court has supplemental jurisdiction over the Plaintiffs' state-law claims contained herein under 28 U.S.C. §§ 1338(b) & 1367 because these claims are joined with substantial and related claims under federal trademark laws and also form part of the same case or controversy.

10.    Defendants are subject to personal jurisdiction pursuant to Federal Rule 4(k)(1)(A) since they all reside in this District and are subject to the general jurisdiction of the courts of New Hampshire.  RSA 510:2.

11.    Venue is proper in this District under 28 U.S.C. § 1391(b) because all of the Defendants reside in New Hampshire, and because the claims alleged herein arose in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### The National Pop Warner Football Organization

12.    Pop Warner football is one of the oldest youth sports programs in America.  It was founded in Philadelphia in 1929, and originally consisted of a four-team league.

13.    In 1934, the organization adopted the name Pop Warner to honor Glen Scobie "Pop" Warner, the legendary coach of the Temple University Owls.

14.     By the end of World War II, the Pop Warner organization included some 250

teams.

15.     In 1959, Pop Warner incorporated as a nonprofit corporation under the laws of

Pennsylvania as Pop Warner Little Scholars, Inc.

16.     Today, Pop Warner provides youth football and spirit (cheerleading and dance)

programs for participants in forty-one states and several countries around the world.  Pop

Warner is the largest youth football and spirit program in the United States, serving

approximately 360,000 young people ranging in age from 5 to 16 years old.

17.     Pop Warner's mission is

> to enable young people to benefit from participation in team sports and
> activities in a safe and structured environment.  Through this active
> participation, Pop Warner programs teach fundamental values, skills and
> knowledge that young people will use throughout their lives.

2005 Pop Warner Little Scholars Official Rules at 11.  Relevant portions of the Official

Rules are attached hereto as Exhibit 1.

18.     Pop Warner's organizational structure is comparable to other national youth

organizations, such as Little League, Babe Ruth League, the Boy Scouts, and the Girl

Scouts.  Locally its membership is organized at three levels: Teams, Associations and

Leagues (a/k/a Conferences).  *See* 2005 Pop Warner Little Scholars Official Rules at 13;

Pop Warner Little Scholars, Inc. Administrative Manual, attached hereto as Exhibit 2, at

5-6.

19.     A Pop Warner Team is the basic unit of organization, made up of a group of participants in a given age/weight class[1] organized under the direction of a coaching staff. A Team may also have up to two associated spirit (cheerleading and dance) squads.  Id.

20.     A Pop Warner Association sponsors and administers a number of Teams, usually in different age/weight classes.  Associations raise money, buy equipment, recruit coaches and secure playing and practice fields.  Each Association has geographic boundaries defined by its Conference (often a neighborhood, city/town or county, depending upon size and population).  Associations may be self-incorporated or may be sponsored by an existing youth-focused entity such as a civic organization, church or municipality.  Associations are considered "sub-members" of Pop Warner.  They are represented by their Conference in all corporate matters, and thus do not have an independent voice within the organization.

21.     Pop Warner Conferences are recognized by Pop Warner as superior to all other local member organizations.  The Conference oversees the activities of its affiliated Associations and enforces all national and local rules.  Conferences set their own geographic boundaries, but may not infringe upon the territory of another Conference. The national Pop Warner organization intervenes in boundary disputes between Conferences.

22.     Each Pop Warner Conference is required to have its own Constitution and By-Laws which must accord with the policies and procedures of the national Pop Warner organization.

---

[1] Pop Warner has nine age/weight classes: Tiny Mite (TM), Mighty-Mite (MM), Junior Pee Wee (JP), Pee Wee (P), Junior Midget (JM), Midget (M), Unlimited (UL), Junior Bantam (JB), and Bantam (B).  2005 Pop Warner Little Scholars Official Rules at 13.

23.     Once a Conference has been granted a charter from the national Pop Warner
organization, the Conference becomes an official member of Pop Warner.  Conferences
register with Pop Warner on an annual basis, pay the required fees, observe all rules and
regulations and must remain in good standing with the Pop Warner National Charter
Committee.

24.     Pop Warner Teams regularly compete with other Teams of the same age/weight
level in the Conference.  Individual Conference Teams may advance to regional playoffs
with teams from other Conferences.  The top Teams eventually compete at the annual
Pop Warner Super Bowl at Disney World.

25.     Pop Warner prohibits dual membership by its member organizations.  In other
words, Conferences and Associations may not join or adopt the rules and regulations of
any other national or regional youth football program.

26.     Pop Warner is recognized by the Internal Revenue Service as a Section 501(c)(3)
charitable organization (EIN 23-1582287).  By virtue of its 501(c)(3) status, Pop Warner
is exempt  from federal income tax and its donors are permitted to take a tax deduction
for their donations to Pop Warner.  In 1990, the IRS granted Pop Warner a "group
exemption letter" extending Pop Warner's tax status to organizations it operates,
supervises and controls, including Conferences and Associations.

27.     Pop Warner is the longstanding owner of the trademark on the name "Pop
Warner" (U.S. Patent & Trademark Office Registration No. 816,322), plus various design
marks and word marks containing iterations of the "Pop Warner" name, including those
appearing in its USPTO Registrations No. 2082942, 2085309, 2086860, and 2086861.

Reports of those registrations are attached as Exhibit 3.  The Pop Warner marks have long appeared on the Principal Register of the USPTO and are incontestable.

28.      Pop Warner also is the longstanding owner of the trademark of the initials "PW" in association with youth football and cheerleading.  It has pending applications for registration of that word mark and design with the USPTO (No. 78159288 and 78159608).  Reports of those applications are attached as Exhibit 4.

29.      Pop Warner has long used the term "Pee Wee" in connection with youth football as a designation of two of its age/weight classes: Junior Pee Wee and Pee Wee.  The term Pee Wee has acquired a secondary meaning as used by Pop Warner in connection with youth football.  Accordingly, Pop Warner has acquired rights in the Pee Wee mark.

30.      Pop Warner publicizes its registered marks through, among other outlets, its own web site, www.popwarner.com, donated television advertising, assorted printed material, posters and other recruiting material, Conference, Association and Team materials, footballs and football equipment, uniforms and other publicity.  The Pop Warner trademarks are famous throughout the United States and in several countries around the world representing high quality youth football programs.

31.      Through the charter and registration process, Pop Warner permits regional and local Pop Warner organizations to use the Pop Warner name and logos for limited purposes so long as the organization maintains its membership in Pop Warner in good standing and obtains annual approval of its charter by the national Pop Warner organization.  In fact, Pop Warner requires that regional and local Pop Warner organizations include the words "Pop Warner" in their legal organization name.

**Pop Warner Football in New Hampshire**

32.     NH Conference was incorporated as a New Hampshire voluntary corporation pursuant to RSA Chapter 292 on April 10, 1991.

33.     The purpose set forth in NH Conference's articles of agreement is "to promote Pop Warner football and cheerleading for the youth of New Hampshire."  NH Conference Articles of Agreement, attached hereto as Exhibit 5.

34.     NH Conference registered as a charitable trust pursuant to RSA 7:28 in 1992.

**35.**     NH Conference held a Pop Warner Conference charter at least since 1991 and maintained its membership in good standing until June 2005.  During this time, it consulted and abided by the Pop Warner Official Rules and Administrative Manual, Exhibits 1 and 2.

36.     NH Conference raised funds over the years using the Pop Warner trademark, goodwill and group tax-exempt status.  By 2000, NH Conference had collected enough funds to place into a substantial certificate of deposit account, which account was continually rolled over up until 2005.

37.     Prior to June 2005, NH Conference was made up of twenty-six (26) Associations throughout the state.  Representatives from these Associations constituted NH Conference's board of directors.

38.     On January 19, 2001, the Internet domain name www.nhpwfc.org was registered by Richard Pelletier on behalf of NH Conference.  *See* Whois Search Results attached hereto as Exhibit 6.

**39.**     NH Conference maintains a web site at www.nhpwfc.org providing information about its programs and activities.  Prior to June 2005, this Web site included multiple

references to the Pop Warner name and logo as well as links to the Pop Warner national organization web site.

## Actions Giving Rise to this Complaint

40.    On June 15, 2005, a majority of the board of directors of NH Conference decided no longer to affiliate with Pop Warner.  Instead of resigning their positions and forming a new organization, these directors chose to violate Pop Warner rules, hijack NH Conference, and affiliate it with another youth football conference known as American Youth Football & Cheer Association ("AYF") based in Phoenix, Arizona.

41.    Three NH Conference Associations opposed the majority action and opted to remain with Pop Warner.  These Associations are Derry, Hampstead and Hooksett ("the loyal Associations").

42.    On June 20, 2005, Deborah A. Smith, acting in her capacity as secretary of NH Conference, filed an Affidavit of Amendment with the New Hampshire Secretary of State.  A copy of the Affidavit is attached hereto as Exhibit 7.

43.    The Affidavit of Amendment states that a majority of the board of directors and membership of NH Conference voted to change the corporation's name to "New Hampshire Youth Football & Spirit Conference."

44.    The Affidavit of Amendment further states that the board of directors voted to change the corporation's charitable purpose.  No longer would it promote Pop Warner; instead the corporation would "promote youth football and cheerleading for the youth of New Hampshire."

45.     The Board of Directors was without authority to make such a change in the
corporation's charitable purpose by a simple majority vote.

46.     On June 20, 2005, Deborah A. Smith, acting in her capacity as secretary of NH
Conference, filed an Application for Registration of Trade Name with the New
Hampshire Secretary of State for the purpose of registering the trade name "New
Hampshire Pee Wee Football Conference."  According to the application, the kind of
business to be carried on under the trade name is "Not for profit youth football and
cheerleading."  That same day, Deborah A. Smith on behalf of NH Conference, registered
the trade name "NHPWFC" for the same purpose.  Copies of those trade name
registrations are attached as Exhibit 8.

47.     NH Conference registered the trade names New Hampshire Pee Wee Football
Conference and NHPWFC for the sole purpose of justifying continued use of the
acronym NHPWFC.  The individual Defendants discussed precisely this course of action
at its initial directors meeting on June 15, 2005.  See Minutes – Part B, attached as
Exhibit 9.  This acronym had been used in the past by NH Conference to signify New
Hampshire Pop Warner Football Conference, and was used as the organization's Internet
domain name, www.nhpwfc.org.

48.     The use of the NHPWFC acronym by NH Conference was intended to, and in fact
does, create confusion as to the Pop Warner trademark.

49.     Sometime after the June 15, 2005 meeting, the board of directors of NH
Conference caused the web site hosted at www.nhpwfc.org to be modified.  The Pop
Warner logo and most references to Pop Warner were removed and replaced with the
AYF logo and name.

50.     However, several pages on the NH Conference web site still contain references to Pop Warner's federally trademarked name in the form of metatags, that is hidden codes which are intended to attract notice from search engines.  *See* Selected NH Conference web pages and associated source code attached hereto as Exhibit 10.

51.     The inclusion of these metatags is responsible in part for misleading search engine results that direct Internet users searching for "New Hampshire Pop Warner Football" to the New Hampshire Youth Football & Spirit Conference Web site.  *See* Search Engine Results attached hereto as Exhibit 11.

52.     On July 7, 2005, the loyal Associations filed an amended 2005 Pop Warner Conference Election Form, which Pop Warner has accepted and recognized as the Conference leadership for Pop Warner in New Hampshire.  A copy of this Election Form is attached hereto as Exhibit 12.  The Election Form lists the Conference's name as "New Hampshire Pop Warner."  The loyal associations are in the process of recruiting new Associations to repopulate Pop Warner football and spirit in New Hampshire.

53.     The de facto directors of NH Conference took control of the corporation's bank accounts and began to make use of its funds.  On July 20, 2005, Richard Pelletier, acting in his capacity as commissioner of NH Conference, tendered a payment of $2,154.37 of the corporation's funds to the Hooksett Hurricanes, one of the loyal Associations.  *See* Richard Pelletier Letter, attached hereto as Exhibit 13.  Each of the three loyal Associations received a similar letter tendering payment from the corporation's funds.

54.     The letter accompanying these payments explained that the board of directors had voted to "issue a percentage allocation from the conferences [sic] travel fund if an association decided not to continue affiliation with the corporation."  Id.

55.    The letter went on to explain that the tendered payment was calculated by allocating a share of the corporation's total travel fund assets ($62,517.43 as of June 15, 2005) to each of the twenty-six Associations based on each Association's average enrollment over the preceding three-year period.  Id.

56.    NH Conference was without authority to distribute charitable funds raised using the Pop Warner trademark, goodwill and tax-exempt status.

57.    In an attempt to protect the funds of NH Conference for the benefit of New Hampshire Pop Warner, Plaintiffs Barbara Doughty and Jason Patch withdrew funds from a bank certificate of deposit in the approximate amount of $61,500, and placed those funds in escrow pending resolution of the dispute over control of NH Conference.

58.    Because of the Defendants' conduct, the Plaintiffs have suffered, and continue to suffer, irreparable harm in the form of dilution of goodwill, injury to reputation, diminution of property value, and other injuries.

## COUNT I
### (Registered Trademark Infringement 15 U.S.C. §§ 1114(a) & 1125(a))

59.    Plaintiffs incorporate in this Count all of the allegations made in the preceding paragraphs as if fully set forth herein.

60.    Pop Warner is the owner of several registered trademarks including the name "Pop Warner" (USPTO Registration No. 816,322) as well as various design marks and word marks containing iterations of the "Pop Warner" name (USPTO Registration Nos. 2082942, 2085309, 2086860, and 2086861).  The Pop Warner marks have long appeared on the Principal Register of the USPTO and are incontestable.

61.     NH Conference, without the consent of Pop Warner, has used, and continues to use, Pop Warner's registered marks in violation of federal trademark law.  15 U.S.C. §§ 1114(a) & 1125(a).

62.     NH Conference's intentional and unauthorized use of the Pop Warner trademark includes but is not limited to its use of the confusingly similar acronym NHPWFC and the domain name www.nhpwfc.org, the inclusion of Pop Warner's trademark in metatags on NH Conference's web site, and its registration and use of the trade name New Hampshire Pee Wee Football Conference.

63.     The Defendants' use of Pop Warner's federally registered trademark in metatags on the NH Conference web site constitutes trademark infringement in violation of the Lanham Act.  Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1065 (9th Cir. 1999).

64.     The Defendants' use of the domain name www.nhpwfc.org, which is confusingly similar to Pop Warner's marks, constitutes trademark infringement in violation of the Lanham Act.  Id. at 1061.

65.     Without injunctive relief, Pop Warner has no means by which to prevent NH Conference's infringing conduct, and Pop Warner will continue to be harmed irreparably by the confusion and deception of the public resulting from NH Conference's conduct. No amount of money damages can adequately compensate Pop Warner if it loses the ability to control the use of its trademarks, reputation and goodwill.  Therefore, Pop Warner is entitled to injunctive relief prohibiting NH Conference from using Pop Warner's trademarks or any marks, words or symbols likely to cause confusion, mistake or deceit as to Pop Warner's trademarks.

66.     Pop Warner is entitled to recover its damages and any profits realized by NH Conference through its misconduct, together with its costs relating to this action pursuant to 15 U.S.C. § 1117(a).

67.     Because NH Conference has acted willfully, maliciously and fraudulently, with knowledge of the likelihood of confusion and deception and with the intent to confuse and deceive, as alleged herein, Pop Warner is entitled to recover treble damages plus its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(b).

68.     Alternatively, Pop Warner is entitled at its election to recover statutory damages pursuant to 15 U.S.C. § 1117(c).

### COUNT II
### (Famous Trademark Dilution 15 U.S.C. § 1125(c))

69.     Plaintiffs incorporate in this Count all of the allegations made in the preceding paragraphs as if fully set forth herein.

70.     Through decades of use and publicity, the Pop Warner trademarks are famous throughout the United States and in several countries around the world  representing high quality youth football programs.

71.     NH Conference's use of the Pop Warner trademark, the acronym NHPWFC, the domain name www.nhpwfc.org and the trade name New Hampshire Pee Wee Football Conference causes dilution of the distinctive quality of Pop Warner's famous mark. Accordingly, Pop Warner is entitled to injunctive relief pursuant to 15 U.S.C. § 1125(c).

72.     Because NH Conference willfully intended to trade on Pop Warner's reputation and to cause dilution of Pop Warner's famous mark, Pop Warner is also entitled to the relief provided for under 15 U.S.C. § 1117(a).

## COUNT III
### (Cyberpiracy 15 U.S.C. § 1125(d))

73.     Plaintiffs incorporate in this Count all of the allegations made in the preceding paragraphs as if fully set forth herein.

74.     NH Conference has registered, trafficked in and used a domain name, www.nhpwfc.org, which is identical to, confusingly similar to and dilutive of Pop Warner's famous trademark with a bad faith intent to profit from the fame and goodwill of Pop Warner's name and trademark in violation of the Anticybersquatting Consumer Protection Act.  15 U.S.C. § 1125(d).

75.     Further, the inclusion of the Pop Warner trademark within metatags on NH Conference's web site demonstrates intent to divert consumers from Pop Warner's online location to another site for an impermissible purpose.  Such conduct contributes to a finding of bad faith under 15 U.S.C. § 1125(d)(1)(B)(i)(V).

76.     NH Conference's conduct as described herein, and their continued ownership and maintenance of a confusingly similar and dilutive domain name, has caused and, unless restrained by this Court, will continue to cause Pop Warner irreparable injury.  Therefore, Pop Warner requests that the Court order NH Conference to transfer the www.nhpwfc.org domain name to Pop Warner, or in the alternative to forfeit the domain name, pursuant to 15 U.S.C. § 1125(d)(1)(C).

77.     Pop Warner is also entitled to recover its damages and any profits realized by NH Conference through its conduct, together with its costs relating to this action pursuant to 15 U.S.C. § 1117(a).

78.     Alternatively, Pop Warner is entitled at its election to recover statutory damages pursuant to 15 U.S.C. § 1117(d).

## COUNT IV
### (Unfair Competition and
### False Designation of Origin 15 U.S.C. § 1125(a))

79.     Plaintiffs incorporate in this Count all of the allegations made in the preceding paragraphs as if fully set forth herein.

80.     By reason of the Defendants' acts complained of herein, the Defendants have intentionally engaged in conduct that constitutes a false designation of origin, a false or misleading description of fact, and a false or misleading representation of fact tending wrongfully and falsely to describe or represent a connection or affiliation between Pop Warner's services and the Defendants' services in violation of 15 U.S.C. § 1125(a). The public is likely to be confused by the Defendants' use of such false designation of origin and false descriptions or representations regarding Pop Warner's services and the Defendants' services.

81.     Without injunctive relief, Pop Warner has no means by which to prevent Defendants' infringing conduct, and Pop Warner will continue to be harmed irreparably by the confusion and deception of the public. No amount of money damages can adequately compensate Pop Warner if it loses the ability to control the use of its trademarks, reputation and goodwill. Thus Pop Warner is entitled to injunctive relief prohibiting the Defendants from using the Pop Warner marks in any way in connection with youth football and cheerleading programs.

82.     Pop Warner is entitled to recover its damages and any profits realized by the Defendants through their misconduct, together with its costs relating to this action pursuant to 15 U.S.C. § 1117(a).

83.     Because the Defendants have acted willfully, maliciously and fraudulently, with knowledge of the likelihood of confusion and deception and with the intent to confuse and deceive, as alleged herein, Pop Warner is entitled to recover treble damages plus its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(b).

84.     Alternatively, Pop Warner is entitled at its election to recover statutory damages pursuant to 15 U.S.C. § 1117(c).

**COUNT IV**
**(Common Law Trademark Infringement and**
**Fraudulent Registration of Trade Name RSA 349:10)**

85.     Plaintiffs incorporate in this Count all of the allegations made in the preceding paragraphs as if fully set forth herein.

86.     NH Conference registered the trade names New Hampshire Pee Wee Football Conference and NHPWFC with the fraudulent purpose of profiting from the fame and goodwill of Pop Warner's trademarks in violation of RSA 349:10.

87.     Through Pop Warner's longstanding use of the term Pee Wee in connection with youth football, this term has taken on a secondary meaning which associates it with Pop Warner, and therefore Pop Warner has acquired common law trademark rights in the term Pee Wee.

88.     NH Conference registered the trade names New Hampshire Pee Wee Football Conference and NHPWFC to enable it to continue to use the acronym NHPWFC, which had long been used by NH Conference to signify New Hampshire Pop Warner Football Conference.

89.     NH Conference's use of the term Pee Wee and the acronym NHPWFC was intended to, and in fact does, generate a likelihood of confusion regarding the identity of the organization and its association with Pop Warner.

90.     Pursuant to RSA 349:10, the owner of a trade name may seek injunctive relief and damages against an entity that registers a trade name by "making any false or fraudulent representations or declarations, verbally, or in writing, or by any fraudulent means."

91.     NH Conference's registration and use of the trade names "New Hampshire Pee Wee Football Conference" and "NHPWFC" have caused and, unless restrained by this Court, will continue to cause Pop Warner to suffer irreparable injury.

## COUNT V
### (Declaratory Judgment 28 U.S.C. § 2201, RSA 491:22)

92.     Plaintiffs incorporate in this Count all of the allegations made in the preceding paragraphs as if fully set forth herein.

93.     The board of directors of NH Conference was without authority to change the corporation's charitable purpose by a simple majority vote of the board.  Rather, such a change in a charitable trust's purpose can only be accomplished through a petition for *cy pres* (under RSA 547:3-d) or deviation.  *See* Attorney General's Report on Optima Health (March 18, 1998).  Moreover, the board of directors had no authority to possess or to spend NH Conference funds to support an AYF conference.

94.     For the reasons set forth, the Plaintiffs seek a declaration, pursuant to 28 U.S.C. §2201 and RSA 491:22, that NH Conference was without authority to amend its Articles of Agreement to change its charitable purpose, that such amendment is without effect, and that it had no ability to use or spend NH Conference funds to support AYF conference activities.

## COUNT VI
### (Breach of Fiduciary Duty)

95.     Plaintiffs incorporate in this Count all of the allegations made in the preceding paragraphs as if fully set forth herein.

96.     Defendants Richard Pelletier, Robert Schiavoni, Ellen Schiavoni and Deborah A. Smith, as directors and officers of NH Conference, owed a fiduciary duty of loyalty to the corporation to promote its charitable mission to support Pop Warner.

97.     Defendants breached that duty by taking the actions described herein without authority to do so, and causing injury to the corporation and the beneficiaries of the charitable trust.

98.     Plaintiffs seek injunctive relief ousting the current de facto directors of NH Conference for breach of fiduciary duties and seek damages against Richard Pelletier, Robert Schiavoni, Ellen Schiavoni and Deborah A. Smith for the injuries caused by the Defendants' actions as described herein.

## COUNT VII
### (Ultra Vires)

99.     Plaintiffs incorporate in this Count all of the allegations made in the preceding paragraphs as if fully set forth herein.

100.    The board of directors of NH Conference, including Defendants Richard Pelletier, Robert Schiavoni, Ellen Schiavoni and Deborah A. Smith, lacked authority to change the corporation's charitable purpose by a simple majority vote.

101.    Such a change in the purpose of a charitable trust can only be accomplished through a petition for *cy pres* or deviation upon a showing that the charitable purpose of the trust has become impossible, impracticable, illegal, obsolete or prejudicial to the

public interest, and that the proposed purpose as nearly as possible fulfills the original purpose.  *See* Attorney General's Report on Optima Health (March 18, 1998).

102.    Because the Defendants were without authority to effect a change in the corporation's charitable purpose through a simple majority vote of the board of directors, such action was *ultra vires* and is thus void.

103.    Plaintiffs seek injunctive relief against Defendants for the harm caused by the Defendants' *ultra vires* acts.

### COUNT VIII
### (Breach of Contract)

104.    Plaintiffs incorporate in this Count all of the allegations made in the preceding paragraphs as if fully set forth herein.

105.    Collectively, Pop Warner's Official Rules, its Administrative Manual, the Conference Charter and the Conference Election Form constitute a binding contract between Pop Warner and NH Conference.

106.    Among the contractual benefits provided to Conferences, Associations and Teams affiliated with Pop Warner is a license for the use of Pop Warner's federally registered trademark, the opportunity to benefit from Pop Warner's 501(c)(3) tax status, along with other benefits and support the national Pop Warner organization provides to the local units.

107.    Under the terms of the contract, Conferences, Associations and Teams must observe all rules, regulations and policies of Pop Warner, including the requirement of annual registration and the prohibition against dual membership (i.e., joining or adopting the rules of any other youth football organization).  Local Pop Warner organizations are

also contractually obligated to include the words "Pop Warner" in their legal organization name.

108.    By virtue of its association with, and adoption of the rules of, American Youth Football & Cheer Association, and by its actions concerning its web site and its use of corporate funds, NH Conference has breached its contract with Pop Warner, and Pop Warner is entitled to damages.

109.    By changing the corporation's name from New Hampshire Pop Warner Football Conference to New Hampshire Youth Football & Spirit Conference, NH Conference has breached its contract with Pop Warner, and Pop Warner is entitled to damages.

## COUNT IX
### (Unfair and Deceptive Acts and Practices in Violation of RSA 7:28-f and RSA 358-A:2)

110.    Plaintiffs incorporate in this Count all of the allegations made in the preceding paragraphs as if fully set forth herein.

111.    NH Conference is a person within the meaning of RSA 358-A:1, I, and a charitable trust within the meaning of RSA 7:21, II(a).

112.    NH Conference, through its use of Pop Warner's trademarks and deceptively similar marks have, *inter alia*, passed off services as those of another; caused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of services; and caused likelihood of confusion or of misunderstanding as to its affiliation, connection or association with, or certification by Pop Warner.

113.    NH Conference's conduct as alleged herein constitutes unfair competition and unfair and deceptive acts in violation of RSA 7:28-f, I(b) and RSA 358-A:2.

114.    NH Conference's conduct as alleged herein also constitutes the unlawful use of a name, symbol, or statement so closely related or similar to that used by another charitable trust that the use thereof would tend to confuse or mislead a solicited person in violation of RSA 7:28-f, I(d).

115.    Because of NH Conference's wrongful acts, as alleged herein, Pop Warner has been irreparably harmed, and will continue to suffer irreparable harm unless NH Conference is enjoined from infringing on Pop Warner's marks.  Pop Warner has incurred substantial damages including costs and attorneys' fees in connection with this action.

116.    Pop Warner is entitled to injunctive relief, actual or statutory damages together with costs and attorney's fees.

117.    Because NH Conference's actions as alleged herein have been willful and knowing, Pop Warner is entitled to treble damages pursuant to RSA 358-A:10.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests judgment as follows:

A.    Enjoin the Defendants from using Pop Warner's federally registered trademark;

B.    Order the Defendants to transfer the Internet domain name www.nhpwfc.org to the Plaintiffs, or in the alternative order the Defendants to forfeit the domain name;

C.    Order the Defendants to withdraw their registration of and cease their use of the trade names New Hampshire Pee Wee Football Conference and NHPWFC;

D.      Declare that the Defendants were without authority to amend NH Conference's charitable purpose, that the attempted amendment is invalid, and that they are not entitled to use of NH Conference funds;

E.      Oust the de facto directors for breaches of their fiduciary duty of loyalty to NH Conference and its mission to support Pop Warner;

F.      Grant other injunctive relief and damages as may be appropriate to remedy the injuries suffered by Plaintiffs; and

G.      Grant such other relief as may be just.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues triable by a jury.

Respectfully submitted,
POP WARNER LITTLE SCHOLARS, INC.
BARBARA DOUGHTY
JASON PATCH

By Their Attorneys,

McLane, Graf, Raulerson & Middleton,
Professional Association

Dated: March 14, 2006          By: /s/ Thomas J. Donovan    __
                               Thomas J. Donovan, No. 664
                               tdonovan@mclane.com
                               Adam M. Hamel, No. 17110
                               adam.hamel@mclane.com
                               900 Elm Street
                               P.O. Box 326
                               Manchester, NH 03105
                               Tel: 603-628-1337

The factual statements set forth in the above Verified Complaint are true to the best of my knowledge and belief.


March 14, 2006                          /s/ Jason Patch
                                        Jason Patch

STATE OF NEW HAMPSHIRE
HILLSBOROUGH, SS

Subscribed and sworn to by Jason Patch, before me, the undersigned officer.

                                         /s/ Thomas J. Donovan
                                           Justice of the Peace



The factual statements set forth in the above Verified Complaint are true to the best of my knowledge and belief.


March 11, 2006                           /s/ Jon C. Butler
                                          Jon C. Butler

STATE OF NEW JERSEY
MERCER, SS.

Subscribed and sworn to by Jon C. Butler, executive director of Pop Warner Little Scholars, Inc., before me, the undersigned officer.

                                         /s/ Robert S. Eastham        [Seal]
                                            Notary Public
                                          State of New Jersey
                                My commission expires March 22, 2007