UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Pop Warner Little Scholars, Inc.;
Barbara Doughty, individually and
on behalf of New Hampshire Pop
Warner Football Conference; and
Jason Patch, individually and on
behalf of New Hampshire Pop Warner
Football Conference,
    Plaintiffs

    v.                                    Civil No. 06-cv-98-SM
                                     Opinion No. 2006 DNH 104

New Hampshire Youth Football &
Spirit Conference; Richard
Pelletier; Robert Schiavoni;
Ellen Shiavoni; and Deborah A. Smith,
    Defendants

## O R D E R

Plaintiffs Pop Warner Little Scholars, Inc., Barbara Doughty, individually and on behalf of New Hampshire Pop Warner Football Conference, and Jason Patch, individually and on behalf of New Hampshire Pop Warner Football Conference bring suit against defendant New Hampshire Youth Football & Spirit Conference, Richard Pelletier, Robert Schiavoni, Ellen Schiavoni, and Deborah A. Smith, seeking redress for trademark infringement under 15 U.S.C. §§ 1114(a) and 1125(a), trademark dilution under 15 U.S.C. § 1125(c), cyberpiracy under 15 U.S.C. § 1125(d), and related state statutory and common law claims.  All of these

claims arise from the alleged continued use of plaintiffs'
federally protected trademarks on defendant's web site.

Plaintiffs move this court to issue a preliminary injunction
pursuant to FED. R. CIV. P. 65(a) to enjoin defendants from using
plaintiffs' marks and to cease using the internet domain name
nhpwfc.org.  For the reasons set forth below, plaintiffs' motion
is denied.

## STANDARD OF REVIEW

"Traditionally, the test for a preliminary injunction has
four factors: 1) a likelihood of success on the merits, 2)
irreparable harm to the plaintiff should preliminary relief not
be granted, 3) whether the harm to the defendant from granting
the preliminary relief exceeds the harm to the plaintiff from
denying it, and 4) the effect of the preliminary injunction on
the public interest."  Rio Grande Cmty. Health Ctr., Inc. v.
Rullan, 397 F.3d 56, 75 (citing Matrix Group, Ltd. v. Rawlings
Sporting Goods Co., 378 F.3d 29, 33 (1st Cir. 2004)).  "The sine
qua non of that formulation is whether the plaintiffs are likely
to succeed on the merits."  Weaver v. Henderson, 984 F.2d 11, 12
(1st Cir. 1993) (citing Narragansett Indian Tribe v. Guilbert,
934 F.2d 4, 6 (1st Cir. 1991)).

**BACKGROUND**

The facts, taken from the pleadings and accepted, for these purposes, as true, are as follows.  Pop Warner Little Scholars, Inc. ("Pop Warner") is a national organization devoted to promoting team sports among American youth by offering various football and "spirit" programs throughout the world. (Compl. ¶¶ 16–18.)  Pop Warner identifies itself by using the trademark "Pop Warner" and other related marks and logos, many of which are registered with the Patent and Trademark Office. (Compl. ¶¶ 27– 28.)  Pop Warner promotes itself, often using its trademarks, through various means including an Internet web site available at www.popwarner.com.  Although Pop Warner does not itself sponsor youth football teams, the organization associates with local and regional affiliates which are chartered by Pop Warner and licensed to use the Pop Warner trademarks in connection with their own football and spirit programs, (Compl. ¶ 31), provided that these local affiliates comply with certain policies and procedures (Compl. ¶ 23.)

One of the defendants in this case, the New Hampshire Youth Football & Spirit Conference ("NHYF"), formerly known as the New Hampshire Pop Warner Football Conference, was one such local affiliate that operated under a Pop Warner charter "since at

3

least 1991." (Compl. ¶ 35.)  During this time, NHYF operated under the Pop Warner trademarks, consistent with the rules and procedures set forth by Pop Warner. (Compl. ¶¶ 35-36.)  One of the mechanisms by which NHYF promoted itself was its web site, which is available at www.nhpwfc.org.  The acronym "nhpwfc" in the domain name derived from the organization's prior name, "New Hampshire Pop Warner Football Conference." (Compl. ¶ 38.)

In June 2005, NHYF ended its relationship with Pop Warner and associated itself with American Youth Football & Cheer Association, a youth football and spirit organization that essentially competes with Pop Warner.  (Compl. ¶ 40.)  As a result of that decision, on June 20, 2005, NHYF changed its corporate name from New Hampshire Pop Warner Football Conference to its current name, New Hampshire Youth Football & Spirit Conference. (Compl. ¶ 43.)  On the same day that NHYF formally changed its name, NHYF registered the trade name "New Hampshire Pee Wee Football Conference" with the New Hampshire Secretary of State, as well as the acronym for that trade name, "NHPWFC." (Compl. ¶ 46.)  Because the acronym for the new trade name is identical to the acronym for the old corporate name, NHYF has continued to use the web address www.nhpwfc.org. (Compl. ¶ 47).

4

The NHYF web site, which provides the principal point of contention in this case, was updated to reflect its new association with American Youth Football & Cheer Association, and "most references to Pop Warner were removed and replaced." (Compl. ¶ 49).  A few references to Pop Warner apparently remained, however, in some of the web pages' "metatags." Metatags help guide Internet search engines, such as Google, to find pages that meet certain search criteria.  (Compl. ¶ 50).  At a hearing on the present matter, NHYF represented to this court that any remaining references to Pop Warner were inadvertent and that it would promptly take the steps necessary to eliminate any such remaining references.  It also committed to placing a disclaimer on its website, making it clear to visitors that it was not affiliated with Pop Warner.

## DISCUSSION

The threshold inquiry in a trademark infringement case is whether the alleged mark is, in fact, a protectible trademark. See, e.g., Boston Beer Co. v. Slesar Bros. Brewing Co., 9 F.3d 175, 180 (1st Cir. 1993).  Once a particular mark is found to warrant protection, the inquiry shifts to whether the alleged infringing use is likely to result in consumer confusion.  See,

e.g., id. (citing Boston Athletic Ass'n. v. Sullivan, 867 F.2d
22, 28 (1st Cir. 1989).

     In considering whether consumers are likely to be confused,
courts typically consider a number of factors, including the
similarity of the marks, the similarity of the goods and services
with which the marks are associated, the relationship between the
channels of trade of each of the goods and/or services, the
relationship between the parties' advertising, the classes of
potential consumers, evidence of actual confusion, the
defendant's intent in adopting the mark, and the strength of the
plaintiff's mark.  Keds Corp. v. Renee Int'l Trading Corp., 888
F.2d 215, 222 (1st Cir. 1989).  For purposes of a preliminary
injunction, however, a plaintiff need only demonstrate that its
marks merit protection and that the allegedly infringing use is
likely to confuse consumers.  Borinquen Biscuit Corp. v. M.V.
Trading Corp., 443 F.3d 112 (1st Cir. 2006).

     Here, because the validity of plaintiffs' trademarks is
undisputed, the critical inquiry is whether consumers will be
confused by defendants' use of plaintiffs' marks, or more
specifically, whether the public might think defendants are still

6

affiliated in some way with plaintiffs' football and spirit
programs, notwithstanding their dissociation.

The record in this case, albeit relatively limited at this
stage, fails to demonstrate that defendants continue to use the
plaintiffs' trademarks.  Plaintiffs acknowledge that the NHYF
removed all marks and logos from its web site, and, except for a
relatively small number of web pages, from the hidden "metatags"
that are used by search engines to index and find content on the
Internet.  With respect to the pages that still contained Pop
Warner's marks in the metatags, NHYF represented that it would
immediately remove such material as soon as it became aware of
its existence.  Indeed, the record demonstrates that defendants
have made good faith efforts to remove Pop Warner's trademarks
from its site, and that they will continue to do so until all
such references are removed.  A further review of the record
reveals that any continued use of the plaintiffs' marks on
defendants' web site is merely the result of technological
inexperience or inefficiency, and not the product of any intent
to deceive or confuse the public.

Plaintiffs give considerable weight to the fact that on many
Internet search services such as Google, defendants' web site

will continue to be associated with Pop Warner long after the
metagags are changed.  Although such search results may be due to
defendants' <u>old</u> metatags, any continued use of the data in those
metatags is not the fault of defendants, but rather, of the
inefficient or inaccurate search algorithms employed by the
operators of Internet search tools.  Put differently, defendants
used the plaintiffs' marks on their web site, including the
metatags, when they were authorized to do so.  When such
authorization was terminated, defendants' use of the marks
ceased.  That Google and other search tools continue to associate
defendants' web site with plaintiffs' marks even after the
metatags have been changed may demonstrate a problem with the
methods by which search web sites operate, but that is not an
issue that can be easily resolved by the defendants.

    Plaintiffs further argue that defendants' continued use of
their acronym-based web address, www.nhpwfc.org, is also likely
to confuse consumers because it is identical to that which was
used by the defendants prior to their dissociation from the
plaintiffs.  The record does not reflect, however, that
defendants have ever used the acronym "NHPWFC" to identify its
goods or services.  While it is true that the plaintiffs operated
under that acronym and maintained a web site with the

www.nhpwfc.org address while lawfully operating under the
defendants' trademarks, there is no evidence to support the
contention that the acronym itself has become associated with the
plaintiffs or that plaintiffs have ever used the acronym, or have
any protectible interest in it.  Accordingly, plaintiffs have
failed to demonstrate that they are likely to succeed on their
trademark infringement claim.

Plaintiffs have failed to demonstrate a likelihood of
success on their cybersquatting claim for a similar reason.  The
Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)
provides for civil liability if one "registers, traffics in, or
uses a domain name that . . . in the case of a mark that is
distinctive at the time of registration of the domain name, is
identical or confusingly similar to" another mark.  Here,
plaintiffs have proffered no evidence that they own or have any
interest in the acronym NHPWFC, which defendants use as their
domain name.  Absent such a showing, plaintiffs have failed to
demonstrate that they are likely to succeed on the merits of
their cybersquatting claim.

Having failed to demonstrate a likelihood of success on the
merits of either its trademark or cybersquatting claims,

9

plaintiffs are not entitled to a preliminary injunction against the defendants.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for a preliminary injunction against defendants (document no. 2) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

September 11, 2006

cc:  Thomas J. Donovan, Esq.
     Adam M. Hamel, Esq.
     Michael D. Ramsdell, Esq.