```
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE
```

Pop Warner Little Scholars, Inc.;
Barbara Doughty, individually and
on behalf of New Hampshire Pop
Warner Football Conference; and
Jason Patch, individually and on
behalf of New Hampshire Pop Warner
Football Conference,
    Plaintiffs

  v.                                                     Civil No. 06-cv-98-SM
                                                       Opinion No. 2007 DNH 027
New Hampshire Youth Football &
Spirit Conference; Richard
Pelletier; Robert Schiavoni;
Ellen Shiavoni; and Deborah A. Smith,
    Defendants


                          **O R D E R**


      Plaintiffs Pop Warner Little Scholars, Inc., Barbara Doughty, individually and on behalf of New Hampshire Pop Warner Football Conference, and Jason Patch, individually and on behalf of New Hampshire Pop Warner Football Conference bring suit against defendant New Hampshire Youth Football & Spirit Conference, Richard Pelletier, Robert Schiavoni, Ellen Schiavoni, and Deborah A. Smith, seeking redress for registered trademark infringement (Count I), trademark dilution (Count II), violations of the Anticybersquatting Consumer Protection Act (Count III), unfair competition and false designation of origin (Count IV),

fraudulent registration of a trade name under N.H. Rev. Stat. Ann. ("RSA") 349:10 (Count IV*),[1] breach of fiduciary duty (Count VI), ultra vires (Count VII), breach of contract (Count VIII), and unfair and deceptive acts and practices in violation of RSA 7:28-f and RSA 358-A:2 (Count IX). Defendant also seeks a declaratory judgment that the plaintiffs lacked authority to change the New Hampshire Youth Football & Spirit Conference Articles of Agreement (Count V).

Defendants move this court to dismiss the declaratory judgment, breach of fiduciary duty, and ultra vires claims on grounds that plaintiffs failed to join the New Hampshire Director of Charitable Trusts as an indispensable party to this action. (Document no. 21.) Defendant also moves to dismiss the unfair and deceptive acts and practices claim on the same grounds, or alternatively, because plaintiffs have failed to state a claim upon which relief can be granted. (Document no. 23.) For the reasons set forth below, defendants' motions are denied.

---

[1] An apparent typographical error in plaintiffs' complaint has resulted in two counts being numbered "IV." For simplicity here, the unfair competition and false designation of origin claim will be referred to as "Count IV" while the subsequent state claim will be referred to as "Count IV*."

**BACKGROUND**

The facts, taken from the pleadings and accepted, for these purposes, as true, are as follows. Pop Warner Little Scholars, Inc. ("Pop Warner") is a national organization devoted to promoting team sports among American youth by offering various football and "spirit" (cheerleading) programs throughout the world. (Compl. ¶¶ 16-18.) Pop Warner identifies itself by using the trademark "Pop Warner" and other related marks and logos, many of which are registered with the Patent and Trademark Office. (Compl. ¶¶ 27-28.) Pop Warner promotes itself, often using its trademarks, through various means, including an Internet web site available at www.popwarner.com. Although Pop Warner does not itself sponsor youth football teams, the organization associates with local and regional affiliates which are chartered by Pop Warner and licensed to use the Pop Warner trademarks in connection with their own football and spirit programs (Compl. ¶ 31), provided those local affiliates comply with Pop Warner policies and procedures. (Compl. ¶ 23.)

One of the defendants in this case, the New Hampshire Youth Football & Spirit Conference ("NHYF"), formerly known as the New Hampshire Pop Warner Football Conference, was one such local affiliate that operated under a Pop Warner charter "since at

least 1991." (Compl. ¶ 35.)  During this time, NHYF operated under the Pop Warner trademarks, consistent with the rules and procedures set forth by Pop Warner. (Compl. ¶¶ 35-36.)  One of the mechanisms by which NHYF promoted itself was its web site, which is available at www.nhpwfc.org.  The acronym "nhpwfc" in the domain name was derived from the organization's prior name, "New Hampshire Pop Warner Football Conference." (Compl. ¶ 38.)

In June 2005, NHYF ended its relationship with Pop Warner and associated itself with American Youth Football & Cheer Association, a youth football and spirit organization that essentially competes with Pop Warner.  (Compl. ¶ 40.)  As a result of that decision, on June 20, 2005, NHYF changed its corporate name from New Hampshire Pop Warner Football Conference to its current name, New Hampshire Youth Football & Spirit Conference. (Compl. ¶ 43.)  On the same day that NHYF formally changed its name, it registered the trade name "New Hampshire Pee Wee Football Conference" with the New Hampshire Secretary of State, as well as the acronym for that trade name, "NHPWFC." (Compl. ¶ 46.)  Because the acronym for the new trade name is identical to the acronym for the old corporate name, NHYF has continued to use the web address www.nhpwfc.org. (Compl. ¶ 47).

NHYF continued to operate as it had prior to its decision to dissociate from Pop Warner, including making use of the same bank account. (Compl. ¶ 53). Concerned for Pop Warner's future in New Hampshire, Barbara Doughty and Jason Patch, both plaintiffs in this case, withdrew funds from a certificate of deposit held in NHYF's name, and placed those funds into an escrow account pending resolution of the dispute. (Compl. ¶ 57). On January 17, 2006, NHYF filed a complaint in New Hampshire Superior Court against Doughty and TD Banknorth, N.A., asserting fraud, conversion, and other related claims. (Def.'s Mot. Dismiss, Ex. A). On July 21, 2006, the state court stayed its suit pending resolution of the instant federal action. (Notice of Stay in Related Case, Ex. A).

## DISCUSSION

In addition to various claims arising under federal law, plaintiffs allege a host of state law claims including common law trademark infringement and fraudulent registration of a trade name, breach of fiduciary duty, ultra vires conduct, breach of contract, and unfair and deceptive practices. Plaintiffs also seek a declaratory judgment that NHYF lacked the authority to change its articles of incorporation and that its use of NHYF

funds for anything other than the promotion of Pop Warner-affiliated football was likewise unlawful.

Defendants urge this court to dismiss the declaratory judgment, breach of fiduciary duty, and ultra vires claims under Rule 12(b)(7) of the Federal Rules of Civil Procedure,[2] because, they assert, the New Hampshire Director of Charitable Trusts is an indispensable party whom the plaintiffs have failed to join. Defendants also urge this court to dismiss the unfair and deceptive acts claim arising under state law (Count IX) for the same reason, or alternatively, because the statute from which the claim arises does not provide for a private right of action. Accordingly, defendants argue that dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[2] Rule 12(b)(7) provides that dismissal is appropriate for "[F]ailure to join a party under Rule 19." Rule 19 states, in pertinent part: "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (I) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."

The issues raised by defendants are important, but there is a fundamental procedural issue that determines the proper disposition of this case.

Under 28 U.S.C. § 1367(a), a federal court with original jurisdiction over federal claims may also exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case of controversy under Article III of the United States Constitution."  In considering whether claims are sufficiently related so as to justify exercise of jurisdiction, courts consider whether the supplemental claims derive from the same "common nucleus of operative fact."  Fafel v. DiPaola, 399 F.3d 403, 412 n. 10 (1st Cir. 2005) (explaining that 28 U.S.C. § 1367(a) codifies the "common nucleus of operative fact" test adopted in United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966) (citation and quotation marks omitted)).

The substantive legal issues in this case fall into two broad, yet easily identified, categories.  The first involves trademark infringement and consumer confusion regarding the identity of NHYF and its association with Pop Warner.  Although there is one state law claim that falls in that category, the

bulk of these issues arise under federal law.[3]  The second broad category involves the scope of authority possessed by the NHYF board and whether its decision to dissociate from Pop Warner was lawful under New Hampshire's charitable trust laws.

While some common events underlie these various causes of action, the specific inquiries into each are distinct. Regardless of whether NHYF had the authority to dissociate from Pop Warner, it did so, and that change in affiliation may, as they allege, harm plaintiffs' intellectual property rights.  Put differently, whether consumers are likely to continue to believe that NHYF is associated with Pop Warner is a question wholly separate from whether NHYF had authority to change the affiliation of the underlying charitable trust.

Further, the parties' interests in each category of claims are different.  Ms. Doughty and Mr. Patch, as individuals, have no interest in the Pop Warner trademarks, which serve to identify both the national organization and its football and cheerleading

---

[3] Trademark infringement under 15 U.S.C. § 1125(a) (Count I), trademark dilution under 15 U.S.C. § 1125(c) (Count II), violations of the Anticybersquatting Consumer Protection Act (15 U.S.C. § 1125(d) (Count III), and unfair competition and false designation of origin under 15 U.S.C. § 1125(a) (Count IV).

programs, as well as the local affiliates licensed to use such marks.  There is no indication that Ms. Doughty or Mr. Patch, or any other individual has ever used a Pop Warner mark to identify any goods or services offered by them.  Accordingly, neither Ms. Doughty nor Mr. Patch have rights in the Pop Warner marks.

Similarly, Pop Warner has no legal interest in whether NHYF unlawfully changed its charitable purpose.  While Pop Warner's business in New Hampshire may have been harmed by NHYF's decision to dissociate, whether NHYF breached its duties under state law is irrelevant to the trademark inquiry, which principally concerns consumer confusion.

Simply put, the facts necessary to resolve the federal trademark issues are quite different from those necessary to resolve charitable trust issues that arise under state law. Because these two distinct categories of claims do not share a common nucleus of operative fact, the court declines to exercise supplemental jurisdiction over the breach of fiduciary duty (Count VI), ultra vires (Count VII), breach of contract (Count VIII), and unfair and deceptive practices (Count IX) claims.

The court similarly declines to exercise jurisdiction over plaintiffs' request for a declaratory judgment (Count V).  The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  The Act, however, is "'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant'; courts have broad discretion to decline to enter a declaratory judgment." DeNovellis v. Shalala, 124 F.3d 298, 313 (1st Cir. 1997) (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995)).  "'In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.'"  Id. (quoting Wilton, 515 U.S. at 288).

The issues presented in plaintiffs' request for a declaratory judgment[4] are governed entirely by state law and

---

[4] Paragraph 94 of the original complaint reads: "For the reasons set forth, the Plaintiffs seek a declaration, pursuant to 28 U.S.C. § 2201 and RSA 491:22, that [NHYF] was without authority to amend its Articles of Agreement to change its charitable purpose that such amendment is without effect, and that it had no ability to use or spend [NHYF] funds to support AYF conference activities."

require factual and legal inquiries wholly distinct from those necessary to adjudicate the federal trademark issues. Accordingly, in the interest of comity and judicial economy, the court declines to exercise its authority under the Declaratory Judgment Act.

## CONCLUSION

For the foregoing reasons, the court declines to exercise supplemental jurisdiction over Counts VI-IX and declines to exercise its jurisdiction under the Declaratory Judgment Act as to Count V.  Accordingly, those claims are dismissed without prejudice, and defendants' motions to dismiss (document nos. 21 and 23) are denied as moot.  What remains, then, are the state and federal intellectual property claims (Counts I, II, III, IV, and IV*), which may well be amenable to settlement by agreement, or on summary judgment.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

March 1, 2007

cc:   Thomas J. Donovan, Esq.
      Adam M. Hamel, Esq.
      Michael D. Ramsdell, Esq.